UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.  5:22-CR-579 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BRIDGET M. BRENNAN |
| v. | ) | |
| | ) | |
| REGINALD ALLEN, JR., | ) | **OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

Defendant Reginald Allen, Jr. ("defendant" or "Allen") seeks reconsideration of the detention order issued on November 8, 2022.  (Doc. No. 17.)  The United States opposed the request (Doc. No. 20), and Defendant submitted a supplement in support (Doc. No. 21).  For the following reasons, Allen's request for pre-trial release with conditions is DENIED.

I.    **Background**

   A. **Indictment and Initial Proceedings**

On September 28, 2022, a federal grand jury returned a nine-count indictment charging Allen with five narcotics trafficking offenses, three firearms offenses (including possessing a firearm in furtherance of drug trafficking activities), and with maintaining a drug premises. (Doc. No. 1.)  With respect to the drug trafficking offenses, the total approximate drug weights charged are: 64 grams of fentanyl; 21 grams of p-fluorofentanyl, a fentanyl analogue; 34 grams of methamphetamine; 22 grams of heroin; and 25 grams of cocaine.  (Doc. No. 18 at PageID

#83.)  Three of the drug trafficking counts carry a statutory mandatory minimum term of imprisonment of five years.  *See* 21 U.S.C. § 841(b)(1)(B).  The penalty associated with possessing a firearm in furtherance of drug trafficking activity is a term of five years to be served consecutively to any term imposed for the underlying offense.  *See* 18 U.S.C. § 942(c)(1)(A)(i).

Allen was arraigned on November 2, 2022, at which time the government moved for detention.  *See* Minutes of Proceedings, 11/2/2022.

### B.  Detention Hearing and Order

A detention hearing was held on November 7, 2022.  (Doc. No. 18.)  All counsel agreed that the statutory presumption of detention applied given the nature of the charges in this case.  (*Id*. at PageID #72.).  In support of its motion, the government proffered the indictment and seven photographs taken by law enforcement officers on the day of the offense.[1]  The government also proffered evidence of Allen's initial encounter with law enforcement, the statement he made to federal agents, and the search of his Hancock Avenue residence, all of which occurred on March 16, 2022.

Allen's day allegedly began with going to a known drug location.  (*Id.* at PageID #78-79.)  He was seen entering the building with a white bag.  (*Id.*)  When he left, he was not carrying the bag.  (*Id.*)  Law enforcement officers initiated a traffic stop.  (*Id*. at PageID #75-76.)  During the stop, a K-9 alerted on the vehicle.  (*Id*. at PageID #76.)  In the center console of the vehicle was a loaded firearm, with one round chambered.  (*Id*.)  Directly underneath the handle of the firearm was a bag containing approximately 35 grams of fentanyl.  (*Id*.; Doc. No. 20, Ex. 1.)  Allen was arrested and taken to the Portage County Sheriff's Office.  (Doc. No. 18 at PageID

---

[1] The same photographs were filed with the government's opposition (Doc. Nos. 20-1 through 20-7, except Doc No. 20-8.)  Although Doc. No. 20-8 was not proffered at the detention hearing, it may still be considered by this Court on *de novo* review.

#76.)  At about this time, the arresting officers learned that Allen was the subject of a separate

federal drug trafficking investigation.  (*Id*.)

      Federal agents were informed of Allen's arrest and went to the Sheriff's Office to speak

with defendant.  What Allen did not yet know was that investigators had been surveilling his

residence on Hancock Avenue in Akron, Ohio for approximately one month.  (*Id.* at PageID #77-

78.)  Agents saw Allen – alone and with others – coming and going from the residence.  (*Id.*)

They also identified the white SUV Allen drove.  (*Id.*)  The investigation revealed that Mr. A.

McCormick leased the residence, but this individual was not seen there during the period of

surveillance.  (*Id.* at PageID #78.)

      Allen was interviewed by federal agents.  When asked where he lived, Allen provided an

address on Adolph Road in Akron, Ohio.  (*Id.* at PageID #79, 95-96.)  When agents said they

saw him coming and going from the Hancock Avenue residence, Allen continued to deny living

there.  (*Id.* at PageID #79.)

      Agents obtained and executed a search warrant for the Hancock Avenue residence.

During the search, agents recovered 11 containers of narcotics.  Three containers contained pure

substances, those being container four (23 grams of fentanyl), container seven (27.8 grams of

methamphetamine with 99% purity), and container eight (7.29 grams of cocaine).  All the others

contained mixtures of the various narcotics listed in the government's opposition.  (*See* Doc. No.

20 at PageID #121-22.)  Additional evidentiary items recovered during the search at Hancock

Avenue included another firearm, a purported drug ledger, digital scales, and a cell phone.[2]

---

[2] A subsequent search of the cell phone revealed communications the government characterized
as indicative of drug trafficking activity.  (Doc. No. 18 at PageID #82-85.)

(Doc. No. 18 at PageID #80-82.)  Agents also recovered Allen's birth certificate, his COVID vaccination card, and other items bearing defendant's name.  (*Id.*)

In reference to the Pretrial Service Report, the government noted Allen's prior narcotics-related conviction and his more recent conviction for possessing a weapon while under disability. (*Id.* at PageID #85.)

Defense counsel also proffered the Pretrial Services Report and called Ms. Moss, defendant's mother, as a witness.  (*Id.* at PageID #86-88.)  Ms. Moss testified that Allen lived with her in Warren, Ohio until they moved to Akron, Ohio when Allen was still young.  Allen has lived in the Akron area since.  Allen has several family members who live in the area as well. He is also an involved father of three children, two daughters and one son.

Ms. Moss knows Allen's girlfriend.  (*Id.* at PageID #90.)  On several occasions, Ms. Moss has visited with Allen and his girlfriend at the girlfriend's home on Brittain Avenue in Akron, Ohio.  (*Id.* at PageID #91-92.)  To Ms. Moss's knowledge and understanding, no firearms or narcotics were at the Brittain Avenue home.  (*Id.* at PageID #92.)  Ms. Moss also testified that Allen is employed as a seasonal construction worker, laid off during this season, but preparing for a multi-week training to obtain his commercial driver's license.  (*Id.*)  Ms. Moss was not certain who lived at the address on Adolph Road.  (*Id.* at PageID #95.)

In argument, the government acknowledged presenting more evidence of danger to the community than risk of nonappearance and included, among other things, the amounts and various types of illegal narcotics maintained in Allen's Hancock Avenue residence; Allen's lack of candor with agents about the Hancock Avenue residence; and his possession of multiple firearms.  And while recognizing Allen's community ties, the government argued that these ties

would not outweigh the danger Allen presents to others because many defendants have ties to the communities in which they are dealing drugs.  (*See id.* at PageID #101.)

In response, defense counsel argued that Allen believed he lived at Brittain Road and therefore provided a correct response to the agent's questions about residency.  (*Id.* at PageID #104.)  Counsel also argued Allen's close family ties and relationship with his children.  As for employment, counsel argued that Allen is employed but not reporting because the work is seasonal.  In addressing Allen's criminal history, counsel emphasized that his most recent offense resolved with the early termination of his probation.  (*Id.* at PageID #106.)

On November 8, 2022, the Magistrate Judge issued a written order of detention after finding, by clear and convincing evidence, that no conditions or set of conditions would reasonably assure the safety of others.  (Doc. No. 47.)

## II.  Analysis

District courts review a magistrate judge's release or detention order *de novo*.  *United States v. Johnson*, 2022 U.S. Dist. LEXIS 127146, at *4-5 (N.D. Ohio July 18, 2022); *United States v. Trent*, 2022 U.S. Dist. LEXIS 2339, at *4 (N.D. Ohio Jan. 5, 2022).[3]  This means that a district court makes an independent determination as to whether any condition or combination of conditions can reasonably assure the defendant's appearance or the safety of the community.  *Id*.

A defendant may be detained only when a "judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and

---

[3] The Bail Reform Act sets forth procedures for either a review of the Magistrate Judge's detention order or the reopening of the detention hearing after a showing of changed circumstances.  *See* 18 U.S.C. §§ 3145(b) and 3142(f), respectively.  Defense counsel does not cite either section, but the Court will construe his objections to the Magistrate Judge's detention order as seeking a *de novo* review pursuant to Section 3145 because the arguments advanced in his filings are aligned with those in Section 3145.  Nevertheless, if the Court considered Allen's request under Section 3142(f) it would still fail.

the safety of any other person and community."  18 U.S.C. § 3142(e).  Dangerousness to another

or the community must be established by clear and convincing evidence.  18 U.S.C. §

3142(f)(2)(B).  A risk of nonappearance need only be supported by a preponderance of the

evidence.  *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004).

 Certain offenses are considered particularly dangerous.  18 U.S.C. § 3142(e)(3).  If the

Court finds probable cause to believe that a defendant committed one of the offenses listed in

Section 3142(e)(3), detention is presumed.  This presumption is rebuttable.  *United States v.*

*Stone*, 608 F.3d 939, 945 (6th Cir. 2010).  "Although a defendant's burden of production is not

heavy, he must produce at least some evidence" that he is neither a risk of flight nor a danger to

any other to rebut the presumption.  *Id.* (internal quotations omitted).

 If a defendant satisfies this burden of production, the Court must decide whether the

government has nonetheless established that no condition or combination of conditions will

reasonably assure defendant's appearance or the safety of any other person or the community.

18 U.S.C. § 3142(e).  In doing so, the Court considers the following statutory factors: (A) the

nature and circumstances of the offense(s) charged; (B) the weight of the evidence against the

defendant; (C) the defendant's history and characteristics, including his character, family ties,

community ties, employment, past record of failure to appear, and probationary status at the time

of the offense; and (D) the nature and seriousness of the danger posed by defendant's release.  18

U.S.C. § 3142(g).  The overall burden of persuasion rests, at all times, with the government.

*Stone*, 608 F.3d at 945-46.

 As part of its *de novo* review, the Court has considered the following:

 1.  Indictment (Doc. No. 1);

2.  Pretrial Services Report (Doc. Nos. 11 and 12)[4];

3.  The Detention Hearing transcript (Doc. No. 18);

4.  The Magistrate Judge's Detention Order (Doc. No. 14);

5.  Defendant's Objections to the Detention Order (Doc. No. 17);

6.  The government's response, including attached Exhibits 1-8 (Doc. No. 20); and

7.  Defendant's supplement in support of pre-trial release (Doc. No. 21).

With the overall burden resting with the government, the Court focuses its review in this instance on whether, in light of the Section 3142(g) factors, there is a condition or set of conditions that will reasonably assure the safety of others and the community.[5]

In evaluating the nature and circumstances of the offenses charged, the Court notes that Allen is charged with five drug trafficking offenses as well as three firearms offenses.  Certain of the drug trafficking counts, if proven, mandate a minimum five-year term of incarceration.  The firearms offense for having a weapon in furtherance of a drug trafficking offense states that the applicable five-year term of incarceration is served consecutively to any underlying offense.  The Sixth Circuit "routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant engaged in violence."  *Stone*, 608 F.3d at 947.  And here we have additional firearms charges, with the firearms found *with* illegal narcotics.  (*See* Doc. No. 20-1, photograph of firearm on top of approximately 35 grams of fentanyl; Doc. No. 20-8, photographs of a second firearm stored near illegal narcotics).

---

[4] The Pretrial Services Report recommended detention.

[5] Because the Court finds that the government has met its overall burden and established by clear and convincing evidence that no conditions or set of conditions will reasonably assure the safety of others and the community, the Court does not address whether defendant rebutted the presumption of detention or persuasively stated the existence of conditions that could assure defendant's appearance at future proceedings.

As to the weight of the evidence of dangerousness, the amounts and types of drugs Allen had in his car and at Hancock Avenue weigh heavily in favor of finding that Allen poses a danger to others and the community.  Driving around with 35 grams of fentanyl was dangerous to others and to Allen.  If even a fraction of that fentanyl had become airborne, Allen and anyone who tried to assist him would very likely have perished.  Allen is alleged to have also possessed numerous other narcotics, some mixed combinations that would very likely cause serious bodily injury or result in the death of others if exposed or consumed.  (Doc. No. 20 at PageID# 20.) Finally, Allen is alleged to have illegally possessed firearms in connection with his drug trafficking (console) or near where he stored narcotics (Hancock Avenue).  This Court recognizes what others courts have recognized: allegations of drug trafficking, especially when coupled with the illegal possession of firearms, presents a significant risk to others.  *See United States v. Johnson*, No. 19-CR-20437-01, 2020 WL 1474397, at *4 (E.D. Mich. Mar. 26, 2020) (noting that the weight of evidence of dangerousness was "strong" when defendant was alleged to have possessed several firearms and a significant quantity of methamphetamines); *United States v. Taylor*, 289 F.Supp.3d 55, 64 (D.D.C. 2018) (finding that the drug and gun offenses charged were "undeniably serious" and observing that "the combination of the distribution of drugs and the illegal possession" of firearms presented a serious danger to the community).

With respect to Allen's history and characteristics, the Court has considered, among other things, his family and community ties, employment status, plans for obtaining a commercial driver's license, and criminal history.  18 U.S.C. § 3142(g)(3).  The Court credits Ms. Moss's testimony that her son was in the process of obtaining a commercial driver's license but was otherwise laid off from his seasonal employment.   There was no evidence of income, save what is likely to result from drug trafficking.  The Court also credits Ms. Moss's testimony that Allen

was an involved and loving parent to his children and that she spent time with him on Brittain Avenue where she did not observe illegal narcotics or firearms.  Notwithstanding his future employments plans or close family ties, neither of these prevented his return to criminal activity and possession of firearms.  And, in crediting Ms. Moss's testimony about the Brittain Avenue address, Allen's use of another residence in which to store drugs and a firearm, along with scales and a drug ledger, is indicative of someone who is actively engaged in drug trafficking, the type of offense that typically merits detention because it is, even absent violent conduct, so inherently dangerous.  *Stone*, 608 F.3d at 947

      As to the nature and seriousness of the danger posed to the community if Allen is released, the facts as proffered by the government at the detention hearing, the significant drug weights involved, that he was allegedly transporting, distributing, and storing substances and mixtures of substances that are widely known to be fatal in even the smallest amounts, his illegal possession of two firearms (one of which was loaded with a chambered round at the time he was stopped by Portage County Sheriff's deputies), his criminal history, and lack of employment or verifiable income are too significant to be overcome by the support of family and friends.  *See United States v. Gray*, 20 F. App'x 473 (6th Cir. 2001).  While home detention and electronic monitoring are options to consider, the reality is that they only assist the Court in knowing where a defendant is, not what he is doing.

**III.** <u>**Conclusion**</u>

After reviewing all of these factors, and for the reasons stated herein, the Court finds by clear and convincing evidence that the defendant presents a danger to the community such that no condition or combination of conditions could reasonably assure the safety of others and the community.  Allen's request for release is DENIED.


**IT IS SO ORDERED.**

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE

**Date**: December 22, 2022